DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STATE OF FLORIDA,**
Appellant,

v.

**DANNY MARTIN,**
Appellee.

No. 4D18-3417

[ November 27, 2019 ]

Appeal of a non-final order from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Ilona M. Holmes, Judge; L.T. Case No. 12-1503 CF10A.

Ashley Moody, Attorney General, Tallahassee, and Marc B. Hernandez, Assistant Attorney General, West Palm Beach, for appellant.

Carey Haughwout, Public Defender, and Claire Victoria Madill, Assistant Public Defender, West Palm Beach, for appellee.

PER CURIAM.

In 2012, the State charged the defendant with first-degree murder after his mother was found dead in their shared apartment. Detectives tracked the defendant using cell-site location information and a cell-site simulator. The defendant was found sitting in the victim's parked car along with several pieces of evidence. The defendant moved to suppress the evidence, arguing it was obtained in violation of his Fourth Amendment rights. The trial court granted the motion to suppress, and the State appeals. We affirm the suppression order.

### Background

Cell phones constantly connect to radio antennae at nearby cell sites. *Carpenter v. United States*, 138 S. Ct. 2206, 2211 (2018). Cell phone service providers create records each time a cell phone connects to a cell site; these records are known as cell-site location information ("CSLI"). *Id.* By linking an individual's phone to a particular cell site at a particular time, cell-site records reveal the general location of the cell phone user. *Id.*

at 2212.

A cell-site simulator, on the other hand, is a device that transforms a cell phone into a real-time tracking device. *State v. Sylvestre*, 254 So. 3d 986, 990 (Fla. 4th DCA 2018). It tricks nearby cell phones into thinking the device is a cell tower, causing the cell phone to send signals to the device. *Id.* A cell-site simulator allows law enforcement to track an individual's precise location. *Id.*

In this case, detectives with the Broward Sheriff's Office applied for court orders under sections 934.23, 934.42, and 92.605, Florida Statutes (2012), which authorized law enforcement to obtain CSLI from cell phone service providers. Detectives also relied on our court's decision in *Tracey v. State*, 69 So. 3d 992 (Fla. 4th DCA 2011) (*Tracey* I), wherein we held a warrant was not required to obtain CSLI.

Notably, the affidavits in support of the applications for court orders did not mention a cell-site simulator. Detectives admitted it was not their practice to include their intent to use a cell-site simulator when applying for a court order to obtain CSLI.

Due to the defendant's competency issues, the trial has been delayed several times. In the interim, our decision in *Tracey* I was overruled by the Florida Supreme Court. *Tracey v. State*, 152 So. 3d 504 (Fla. 2014) (*Tracey* II). The Supreme Court of the United States has also held that the government must obtain a warrant supported by probable cause before tracking an individual using CSLI. *Carpenter*, 138 S. Ct. at 2221.

### *Analysis*

A trial court's ruling on a motion to suppress is subject to a mixed standard of review. *Pagan v. State*, 830 So. 2d 792, 806 (Fla. 2002). An appellate court must defer to the trial court's findings of fact, but it reviews legal issues de novo. *Id.* The Florida Constitution contains a provision mirroring the Fourth Amendment's protection against unlawful searches and seizures. Art. I, § 12, Fla. Const. This provision is construed in conformity with the Fourth Amendment as interpreted by the Supreme Court of the United States. *Id.*

The State argues two issues on appeal. First, the State contests the defendant's standing to challenge the search. Second, the State argues the good faith exception to the exclusionary rule applies to the State's warrantless use of CSLI and the cell-site simulator.

2

### i.    Standing

The State challenges the defendant's standing for the first time on appeal. "[A]n argument regarding standing to contest the search and seizure of evidence has been subsumed into Fourth Amendment issues and may be raised for the first time on appeal." *State v. Fosmire,* 135 So. 3d 1153, 1156 (Fla. 1st DCA 2014).

For a defendant to have standing to challenge a search, he or she must show a proprietary or possessory interest in the area of the search *or* that there are other factors that create a reasonable expectation of privacy. *State v. Singleton,* 595 So. 2d 44, 45 (Fla. 1992); *Rakas v. Illinois,* 439 U.S. 128, (1978). As the State points out, a defendant does not have standing to challenge the search of a stolen vehicle in which he or she has no possessory interest. *Singleton,* 595 So. 2d at 45. However, individuals have a reasonable expectation of privacy "in the whole of their physical movements." *Carpenter,* 138 S. Ct. at 2217. A defendant who is tracked using CSLI data has standing to challenge the search of his or her physical location. *Id.*

This case is distinguishable from *Singleton* because, here, the defendant challenged the search and seizure of his location data, not the search of the car. The car and evidence therein were discovered as a result of the police's use of CSLI and a cell-site simulator. We conclude that the defendant has standing to challenge the search.

### ii.    Warrantless use of CSLI and Cell-Site Simulator

When evidence is obtained in violation of the Fourth Amendment, it may be suppressed under the exclusionary rule – a prudential doctrine created to deter future Fourth Amendment violations. *Davis v. United States,* 564 U.S. 229, 236 (2011).

A narrow "good faith" exception to the exclusionary rule applies when police conduct a search in objectively reasonable reliance on binding judicial precedent, even when that precedent is later overruled. *Id.* at 239-40. The State argues that detectives reasonably relied on precedent set in *Tracey* I, along with statutes that authorized law enforcement to access CSLI using court orders.

In *Davis,* detectives relied on binding Supreme Court precedent that specifically authorized their conduct and that had been uniformly applied across the country for nearly thirty years. 564 U.S. at 235. *Davis* did not address whether the good faith exception applied to areas of law that

3

remained unsettled at the time of a search. *Id.* at 250-52 (Sotomayor, J., concurring in judgment). Florida courts have since held that the good faith exception does not apply to areas of law that are undecided or unsettled. *See Carpenter v. State*, 228 So. 3d 535, 542 (Fla. 2017) (holding it was unreasonable for investigators to rely on a decision that expressed doubt about its holding and was under active consideration by the Florida Supreme Court); *Ferrari v. State*, 260 So. 3d 295, 307 (Fla. 4th DCA 2018) (holding the good faith exception did not apply where the State did not rely on binding precedent or clearly applicable statutes).

Here, the State lacks the benefit of longstanding precedent authorizing the warrantless use of CSLI. However, *Tracey* I *and* the statutes authorizing law enforcements to access CSLI with a court order, taken together, provided sufficient precedent on which the detectives reasonably relied.

The cell-site simulator is another matter. Neither the application nor the court order mentioned a cell-site simulator. The State argues that the detectives reasonably believed the court order authorized use of a cell-site simulator because it authorized the disclosure of "real-time/live cell site locations" and the use of a "mobile tracking device". In 2012, no binding case law addressed whether police must obtain a warrant to use a cell-site simulator. The good faith exception applies when binding precedent affirmatively authorizes a particular police practice. *Davis*, 564 U.S. at 240.

We have since held that the State must establish probable cause and obtain a warrant before using a cell-site simulator. *Sylvestre*, 254 So. 3d at 992. The use of a cell-site simulator is even more invasive than CSLI, as it allows law enforcement to track an individual's location in real time without going through the third-party service provider. This presents significant privacy concerns. In *Sylvestre*, we rejected the same argument the State makes now and held that the CSLI order did *not* authorize use of a cell-site simulator. *Id.*

The exclusionary rule's purpose is to deter future Fourth Amendment violations. *Davis*, 564 U.S. at 236. Courts must weigh deterrence against the "heavy toll" exclusion exacts on the judicial system. *Id.* at 237. "For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs." *Id.*

The Fourth Amendment violation here is precisely the kind of violation the exclusionary rule seeks to deter. The CSLI data led detectives to a broad search area where the defendant was located. Unable to find the

4

defendant's exact location, the detectives went outside the scope of the court order and used a cell-site simulator to locate him. The government cannot rely on the absence of binding decisional law in this area to conduct a warrantless search. We therefore affirm the trial court's ruling on the motion to suppress.

*Affirmed.*

TAYLOR, MAY and CIKLIN, JJ., concur.

\*          \*          \*

***Not final until disposition of timely filed motion for rehearing.***